UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**LESLIE ROY CRAIG** and
**BRENDA SUE CRAIG**,

Debtors.

Case No. **12-60488-7**

## *MEMORANDUM of DECISION*

At Butte in said District this 20th day of December, 2012.

In this Chapter 7 bankruptcy case, after due notice, a hearing was held September 25, 2012, in Billings on the Trustee's Objection to Exemption filed May 30, 2012. The Chapter 7 Trustee, Joseph V. Womack of Billings, Montana, appeared at the hearing personally and with his counsel, John Heenan of Billings, Montana. Debtors were represented at the hearing by their counsel of record, Phillip R. Oliver of Billings, Montana. Debtors Leslie Craig and Brenda Sue Craig ("Brenda") testified as did Michael Krum ("Krum"). The Trustee's Exhibits 1 through 7 and Debtors' Exhibits A through F were admitted into evidence without objection.

BACKGROUND

In 2006, Debtors purchased roughly 30 acres located in Yellowstone County, which acreage was identified by the parties at the hearing as Tracts 2A and 2B. Tract 2A is 17.23 acres and is subject to an agricultural exemption on Certificate of Survey No. 3114 Amended. Debtors leased Tract 2A to Krum for use in his farming business. Krum had, at some point, expressed an

1

interest in purchasing Tract 2A.

Debtors built a home on Tract 2B.  In June of 2010, Debtors decided to sell, if possible, both Tracts 2A and 2B.  Debtors listed Tract 2B, including the home thereon, for sale.  In February of 2011, Debtors accepted an offer and agreed to sell Tract 2B to Loren Bangert ("Bangert") and Lacy Fleharty ("Fleharty").  At that time, Bangert and Fleharty also wanted to purchase Tract 2A, but did not have the financial wherewithal to do so.  Consequently, in connection with the sale of Tract 2B, Debtors granted Bangert and Fleharty a Right of First Refusal with respect to Tract 2A.  Brenda testified that if Debtors had been able to sell both Tract 2A and 2B in 2011, they would have used the proceeds to either purchase a new home or pay down their mortgage.  It was not clear from the evidence how Debtors used the proceeds from the sale of Tract 2B, but bankruptcy worksheets completed by Debtors suggest Debtors used the sales proceeds to purchase their current home.

On February 10, 2012, Bangert and Fleharty, at the request for Debtors, terminated their Right of First Refusal.  Krum was in Arizona at that time.  Krum recalled receiving a telephone call from Debtors in late February 2012 inquiring as to whether Krum was still interested in purchasing Tract 2A.  Krum expressed his continuing interest and when he returned to Montana, he and Debtors executed on March 1, 2012, a "(Land) Buy-Sell Agreement" whereby Krum agreed to purchase and Debtors agreed to sell Tract 2A for the sum of $60,305.00.  Per the (Land) Buy-Sell Agreement, the closing date was scheduled for March 30, 2012.

The sale of Tract 2A to Krum closed on March 22, 2012, and the proceeds from the sale were deposited directly into Debtors' checking account.  On March 27, 2012, Debtors used $59,575.30 of the proceeds from the sale of Tract 2A to pay down their home mortgage with US

Bank Home Mortgage. Debtors' homestead property, which is also located in Yellowstone County, has an approximate value of $208,000.00. Prior to March 27, 2012, Debtors owed approximately $209,000.00 to US Bank Home Mortgage. Debtors disclose that as of their March 30, 2012, petition date, they owed US Bank Home Mortgage $149,480.00.

Brenda first met with Debtors' attorney, Phillip Oliver ("Oliver"), on February 24, 2012, at which time Brenda paid Oliver $300.00. During the initial meeting, Oliver provided Brenda with a packet of information which included worksheets for use in completing Debtors' bankruptcy schedules. Debtors completed the worksheets and signed them on March 1, 2012. Brenda testified Debtors were exploring their options at that time, but knew they were going to seek protection under the Bankruptcy Code. Brenda testified that she and Oliver discussed in "generalities" what Debtors could or should do with the proceeds from the sale of Tract 2A. Brenda conceded that she was aware that if Debtors did not use the sales proceeds to reduce their mortgage, that a bankruptcy trustee could possibly take such funds.

Debtors paid an additional $1,200.00 to Oliver on March 23, 2012. On March 27, 2012, Debtors paid US Bank Home Mortgage $59,575.00. Referring to the $59,575.00 payment, Brenda testified during her 2004 Examination that based upon an "educated guess[,] she thought it made more sense to "pay a bill with it" rather than "lose it." On their Statement of Financial Affairs, Debtors disclose the sale of Tracts 2A and 2B. Debtors also disclose on their Statement of Financial Affairs the March 23, 2012, payment to Oliver and the March 27, 2012, payment of $57,575.00 to US Bank Home Mortgage. Debtors were making payments on their unsecured debt until February 2012, after which time Debtors only made their monthly mortgage payments to US Bank Home Mortgage. Debtors do not disclose any pending lawsuits on their Statement of

3

Financial Affairs. Debtors' only secured debt is owed to US Bank Home Mortgage for their home. Debtors list $215,417.28 of unsecured debt on their Schedule F, of which at least $170,000.00 is medically related.

## CONTENTIONS OF THE PARTIES

In his pending objection, the Trustee, relying on *In re Lacounte*, 342 B.R. 809 (Bankr. D. Mont. 2005), seeks to deny, to the extent of $59,575.30, Debtors' claimed homestead exemption in real property located at 6626 S 12th Street, Huntley, Montana 59037, and described more particularly as:

> UNIT 2 OF CHIPPER TOWNHOMES, LOCATED ON LOT 12, BLOCK 6, OF PRYOR CREEK ESTATES FIRST FILING, (A SUBDIVISION), YELLOWSTONE COUNTY, MONTANA, ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE CLERK AND RECORDER OF SAID COUNTY, UNDER DOCUMENT NO. 1215446
>
> TOGETHER WITH AN UNDIVIDED 50 PERCENTILE INTEREST IN THE GENERAL COMMON ELEMENTS AND LIMITED COMMON ELEMENTS ATTACHED TO EACH UNIT, AS THE SAID UNIT AND GENERAL COMMON ELEMENTS AND OWNERSHIP FOR CHIPPER TOWNHOMES RECORDED SEPTEMBER 7, 1999, UNDER DOCUMENT NO 3064960, RECORDS YELLOWSTONE COUNTY, MONTANA

Debtors, also citing to *In re Lacounte* and a quotation therein from *Devers v. Bank of Sheridan Montana (In re Devers)*, 759 F.2d 751 (9th Cir. 1985), counter that "the facts show that the Debtor's [sic] had been trying to sell the property since 2010 and that the transfer was the result of a series of events that took place and not because the debtors wanted to hinder, delay or defraud creditors."

## APPLICABLE LAW

The Trustee maintains in his objection that Debtors' claimed homestead exemption

4

violates 11 U.S.C. § 522(o). "It has long been the rule in this and other jurisdictions that the purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy is not fraudulent per se. *In re Dudley*, 72 F.Supp. 942, 945-947 (D.Cal.1947), *aff'd per curiam, Goggin v. Dudley*, 166 F.2d 1023 (9th Cir.1948); *Love v. Menick*, 341 F.2d 680, 682-683 (9th Cir. 1965); *see* 1 COLLIER ON BANKRUPTCY, ¶ 6.11, p. 853." *Wudrick v. Clements*, 451 F.2d 988, 989-90 (9th Cir. 1971). *See also Gill v. Stern (In re Stern)*, 345 F.3d 1036, 1044-45 (9th Cir. 2003). Subsection 522(o) of was added to the Bankruptcy Code as a result of the 2005 BAPCPA amendments. Subsection 522(o) now reads:

> For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in--
>
> * * *
>
> > (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

The foregoing provision is limited to conversion by a debtor of nonexempt property into a homestead exemption with the intent to hinder, delay, or defraud a creditor. The phrase "with the intent to hinder, delay, or defraud a creditor" is a term of art that is not defined in the Bankruptcy Code. However, the same terminology also appears in 11 U.S.C. §§ 548(a)(1)(A) and 727(a)(2). Because Congress elected to draft 11 U.S.C. § 522(o) with language that is identical to that used in 11 U.S.C. §§ 548(a)(1)(A) and 727(a)(2), this Court has held that case law under 11 U.S.C.

§§ 548(a)(1)(A) and 727(a)(2) provides instructive guidance with respect to § 522(o). *In re Lacounte, supra.*

With regard to interpretation of the phrase "with the intent to hinder, delay, or defraud a creditor", the Ninth Circuit Court of Appeals in *Devers*, 759 F.2d at 753, held that under § 727(a)(2), a plaintiff must demonstrate a debtor's actual intent to conceal assets, or to hinder, delay, or defraud creditors. The Court in *Devers* wrote:

> [An] actual intent to hinder, delay, or defraud must be shown. Constructive fraudulent intent cannot be the basis for denial of discharge, *In re Adlman*, 541 F.2d 999, 1003 (2d Cir.1976), but fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct. *Farmers Co-op Association v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982). The statute is to be construed liberally in favor of debtors and strictly against the objector. *In re Adlman*, 541 F.2d at 1003; *In re Rubin*, 12 B.R. 436, 440 (Bankr. S.D.N.Y. 1981).
>
> * * *
>
> Because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of a case. *In re Nazarian*, 18 B.R. 143, 146 (Bankr. D.Md.1982).

*Id.* at 753-54; *In re Weyer*, 16 Mont. B.R. 162, 167-68 (Bankr. D. Mont. 1997). *See also First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342-43 (9th Cir.1986) (A "discharge of debts may be denied under section 727(a)(2)(A) only upon a finding of actual intent to hinder, delay, or defraud creditors. Constructive fraudulent intent cannot be the basis for denial of a discharge.") (citations omitted).

In *Devers*, this Court denied the debtors a discharge based on the debtors' conduct, which was found to be in violation of § 727(a). (Unpublished opinion). The conduct complained of by the creditor bank was that debtors were selling secured livestock and commingling the proceeds therefrom with other assets. In addition, the debtors were unable to explain the disappearance of

6

missing ranch equipment.

The Ninth Circuit affirmed the decision of this Court, and the decision of the District Court of Montana, finding that the debtors' explanation regarding the disappearance of the ranch equipment was:

> [Y]et another indication of their disregard of their responsibilities during the reorganization process. The Creditor proved that the Debtors once had owned the tractor, and that they did not produce it for repossession. While the burden of persuasion rests at all times on the creditor objecting to the discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a *prima facie* case. *In re Reed*, 700 F.2d 986, 992-93 (5th Cir.1983). A debtor's failure to offer a satisfactory explanation when called on by the court is a sufficient ground for denial of discharge under section 727(a)(5).

*Devers*, 759 F.2d at 754. As further explained by the Ninth Circuit, under § 727(a)(2)(A), a debtor's intent need not be fraudulent:

> Denial of discharge . . . need not rest on a finding of intent to *defraud*. Intent to hinder or delay is sufficient. *Matter of Smiley,* 864 F.2d 562, 568 (7th Cir.1989); *In re Adeeb,* 787 F.2d 1339, 1343 (9th Cir.1986). Furthermore, a debtor need not succeed in harming creditors to warrant denial of discharge because "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *In re Adeeb,* 787 F.2d at 1343.

*Bernard v. Sheaffer* (*In re Bernard*), 96 F.3d 1279, 1281-1282 (9th Cir. 1996). *See also Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010), citing *In re Bernard*, 96 F.3d at 1281 ("Because the language of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or delay a creditor.")

Perhaps instructive in the analysis of § 522(o) are the "badges of fraud," which courts have referred to as circumstantial evidence supporting a finding that a debtor disposed of property with an intent to hinder, delay, or defraud a creditor. These "badges of fraud" include:

(1) a close relationship between the transferor and transferee; (2) that the transfer was in

7

>anticipation of a pending suit; (3) that the debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the [d]ebtor's property was transferred; (5) that the transfer so completely depleted the [d]ebtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the debtor received inadequate consideration for the transfer.

*Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (citing *Emmett Valley Assocs. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir. 1992). These badges are not conclusive, but can be considered to weigh the facts of the case.

### DISCUSSION

As stated earlier in this decision, the conversion of non-exempt assets into exempt assets on the "eve of bankruptcy" is not prohibited per se. Absent a showing of actual intent to hinder, delay, or defraud creditors, Debtors' sale of Tract 2A and application of the proceeds to the principal balance of their home mortgage was not a violation of 11 U.S.C. § 522(o).

This case is a close call. However, after considering and weighing the badges of fraud discussed in *Retz*, 606 F.3d at 1200, the Court finds that the Trustee has not demonstrated that Debtors had an actual intent to hinder, delay or defraud creditors.

First, Debtors are not related to Krum and the Trustee makes no allegation that Krum is an insider as that term is defined at 11 U.S.C. § 101(31). The only relationship between Debtors and Krum this Court can glean from the evidence is that Krum leased Tract 2A from Debtors prior to purchasing said parcel of real estate. Also, other than this bankruptcy proceeding, it does not appear Debtors were anticipating any type of litigation, and the testimony and evidence show that Debtors' plans to sell Tract 2A began in 2010, long before Debtors considered filing for bankruptcy. Although the sale closed just days before the bankruptcy petition was filed, this was the final step in a process which had been in the works for several years. Furthermore, Debtors'

transfer of the sale proceeds to pay Debtors' home mortgage is consistent with Debtors' intentions in 2010 when they listed Tract 2B for sale and in February of 2011 when Debtors agreed to sell Tract 2B to Bangert and Fleharty. If Bangert and Fleharty would have had the financial wherewithal to purchase Tract 2A in 2011, Debtors would have sold Tract 2A and, like they did with the proceeds from the sale of Tract 2B, applied the sales proceeds to the purchase of their current home.

Similarly, while Debtors did admittedly sell their only non-exempt asset, no evidence exists in the record that Debtors received inadequate consideration from Krum for the transfer of Tract 2A. Moreover, while it may hold true that the application of the sale proceeds to the home mortgage depleted the Debtors' assets such that creditors have been hindered or delayed in securing a judgment or obtaining a payment through this bankruptcy proceeding, Brenda's testimony indicates that such effect was not the actual intention of the Debtors when they decided to sell Tract 2A and transfer the funds to US Bank Home Mortgage.

Although *Lacounte* has proven instructive in matters regarding § 522(o), this case is distinguishable from *Lacounte*. *Lacounte* involved facts suggesting misconduct in the form of sale of assets to insiders after seeking advice of bankruptcy counsel. No such contention exists in the current case. In *Lacounte*, based on advice given to their daughter by various attorneys to sell all things the debtors did not need and apply the proceeds to their home mortgage, the debtors sold their 1958 Impala with trailer to their son-in law for $12,500.00, their 1992 Corvette to a non-related individual for $13,000.00, their 1975 Chrysler Cordoba for $300.00, and a future undivided one-third interest in debtor's mother's farm to their sister for $30,000.00. Debtor and his sister then decided that the value of the future interest was $20,000.00 instead of $30,000.00,

9

and debtor returned $10,000.00 to his sister. Debtors then applied $42,500.00 of the $42,800.00 total sale proceeds to their home mortgage. Debtors did not contemplate these sales prior to bankruptcy. The Court concluded that the debtors intentionally sold or transferred various nonexempt assets with the purpose of diverting funds away from debtors' creditors.

The current case involves the sale of a non-exempt asset, Tract 2A, which sale evidence suggests had been contemplated as early as 2010. In 2012, the Debtors finally obtained termination of the Right of First Refusal from Bangert and Flaherty, contacted Krum, and proceeded to close on the sale of Tract 2A within days of filing their bankruptcy petition. Debtors did not explore the option of bankruptcy until the end of February of 2012, long after they had decided to sell Tract 2A.

This Court deems the evidence of Debtors' meeting with Oliver and the advice Debtors received insufficient to support an inference of intent to hinder, delay or defraud a creditor. Debtors testified that they did not meet with Oliver until February 24, 2012. Prior to meeting with Oliver, Debtors had obtained the termination of Right of First Refusal on Tract 2A, presumably in effort to complete the sale of Tract 2A. The Trustee contends the following testimony given at the § 341 Meeting of Creditors on April 26, 2012, after the sale had closed and Debtors' bankruptcy petition had been filed, justifies denying a portion of Debtors' claimed homestead exemption:

> TRUSTEE: You would agree that by selling this land that was free and clear you transferred that equity and put it into your home as exempt to create more equity there?
>
> BRENDA: Yes sir.

This admission shows Brenda's understanding of the effect of the transaction on the date of the Meeting of Creditors, but is not indicative of intent to hinder, delay, or defraud on Debtors' part.

10

Brenda testified at the § 341 meeting of creditors that Debtors applied the proceeds from the sale of Tract 2A to pay down Debtors' home mortgage in order to pay Debtors' "No. 1 debt." Although a person with an understanding of bankruptcy exemptions would recognize that paying one creditor inherently means that other creditors will not be paid, no evidence exists in the record indicating that the Debtors' actual intent in applying the Tract 2A sale proceeds to the home mortgage was to hinder, delay, or defraud their creditors.

This Court finds that Brenda's testimony supports the finding that Debtors had used the Tract 2A proceeds in a manner which was intended back in 2011, prior to considering bankruptcy. Specifically, Brenda testified that had Debtors been able to sell both Tract 2A and Tract 2B in 2011, they would have used the proceeds to either purchase a new home or pay down their mortgage. This was not based on advice of counsel; in fact, no evidence exists in the record that they had even considered bankruptcy prior to 2012. When Debtors finally sold Tract 2A they paid down their mortgage as they had originally contemplated. Worksheets completed by Debtors suggest that Debtors used the sale proceeds from Tract 2B to purchase their current home. Debtors' intention to use proceeds to pay a home mortgage existed long before Debtors considered bankruptcy. This evidence refutes the Trustee's contention that the Debtors' used proceeds to pay down their home mortgage with intent to hinder, delay or defraud a creditor.

Applying the above standards, this Court concludes that the Trustee failed to satisfy his burden of proof to show by a preponderance of the evidence that the Debtors disposed of their nonexempt property and transferred the proceeds to their home mortgage with the intent to hinder, delay or defraud a creditor in violation of § 522(o), when Debtors sold Tract 2A and transferred the sale proceeds to pay Debtors' mortgage on the home where Debtors claimed a

homestead exemption.

For the reasons discussed above, the Court will enter a separate order providing as follows:

IT IS ORDERED that the Trustee's Objection to Exemption filed May 30, 2012, is OVERRULED.

BY THE COURT

*/s/ Ralph B. Kirscher*

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana